FILED

2022 Sep-21  PM 03:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF
## ALABAMA NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **Vera Buckner,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Mazda Toyota Manufacturing U.S.A. Inc.,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

**COMES NOW** the Plaintiff, Vera Buckner, ("Plaintiff") by and through her undersigned counsel, and hereby files this Complaint against Mazda Toyota Manufacturing U.S.A. Inc., ("Defendant") and seeks redress for discrimination and retaliation suffered in Plaintiff's capacity as an employee of the Defendant. Plaintiff has been discriminated against by the Defendant on account of Plaintiff's race and gender in violation of **Title VII** of the Civil Rights Act of 1964, as amended, **42 U.S.C §§ 2000e *et seq,*** and any other cause(s) of action that can be inferred from the facts set forth herein and states the following:

## JURISDICTION AND VENUE

1. The jurisdiction of this Court is invoked pursuant to Title VII of the Civil Rights Act of 1991, as amended, 42 U.S.C. §2000e-5(f)(3), 28 U.S.C. §1331, and 28 U.S.C. §1343(a)(4).

2. The unlawful employment acts and other acts alleged herein took place within the Northeastern Division of the Northern District of Alabama.

3. Venue is proper in this Court, the United States District Court for the Northern District of Alabama, pursuant to **Title 28, U.S.C. § 1391** and the Local Rules of the United States District Court for the Northern District of Alabama.

## PARTIES

1. Plaintiff Vera Buckner, an African American female, is domiciled in the State of Alabama.

2. At all relevant times the Plaintiff was an "employee" of the Defendant under Title VII.

3. The Defendant, Mazda Toyota Manufacturing U.S.A. Inc., is a foreign corporation licensed to do business in the state of Alabama.

4. At all relevant times, Defendant was an "employer" under Title VII.

5. Defendant employs over 15 employees and is subject to Title VII.

## COMPLIANCE WITH JURISDICTION REQUIREMENTS OF TITLE VII

6. Plaintiff has complied with the jurisdiction requirements of Title VII that on to wit: Plaintiff caused a Charge with Discrimination in employment to be filed with the Equal Employment Opportunity Commission ("EEOC") in accordance with Section 705 of Title VII.

7. A notification of Right to Sue letter was issued on June 24, 2022, and the complaint has been filed within (90) days of receipt of said Notification of Right to Sue. A copy of the notice is attached as Exhibit 1.

## FACTS

8. Plaintiff was hired by Mazda Toyota Manufacturing USA Inc. ("Mazda") on or around October 5, 2020.

9. Starting on or around March 8, 2021, Plaintiff began training with Mr. Fujiwara Manabu ("Mr. Manabu") a male from a foreign country.

10. At the same time, Justin (last name unknown), a white male, was also training with Mr. Manabu.

11. On or about April 16, 2021, Plaintiff was informed she had been terminated for failing to show up to work.

## COUNT I

## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENEDED, 42 U.SC. § 2000E ET SEQ.

### (Hostile Work Environment)

12. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-11 as if fully set out herein.

13. Plaintiff is an African American female and is, therefore, a member of a protected class.

14. The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., as Defendant has created, condoned, and fostered a hostile work environment to the detriment of Plaintiff, and to which employees outside of Plaintiff's protected class were not subject to.

15. From the time Plaintiff began training with Mr. Manabu on or about March 8, 2021, she was treated differently than employees outside of her protected class.

16. Mr. Manabu repeatedly told Plaintiff that he did not and would not work with females.

17. Mr. Manabu would ignore the Plaintiff and not properly train her for the job she had been hired for.

18. On or about March 26, 2021, Plaintiff was attempting to do her job and Mr. Manabu again told her that he does not work with females.

19. Plaintiff was then forced to do more training than those outside of her protected class.

20. However, Mr. Manabu would show employees outside of Plaintiff's protected class training techniques that made the job easier, but he refused to show and teach them to Plaintiff.

21. Plaintiff has a good faith belief that this was due to the fact that she was an African American female.

22. Plaintiff attempted to inquire about the training and issues with the job but was repeatedly ignored by Mr. Manabu.

23. However, other employees outside of Plaintiff's protected class were allowed to inquire about training and issues with the job.

24. On or about March 26, 2021, Plaintiff was performing an inspection on a vehicle and her white male co-worker was standing by and watching with Mr. Manabu.

25. Once Plaintiff was finished, she was standing by Mr. Manabu watching her white male co-worker perform his inspection.

26. Mr. Manabu yelled at the Plaintiff and told her to "find something to do."

27. Plaintiff expressed she was just watching the inspection as her white male co-worker had done.

28. Mr. Manabu told the Plaintiff that her white male co-worker was "perfect."

29. After these events Plaintiff questioned why Mr. Manabu was treating her differently than her white male co-worker.

30. He expressed that he "does not work with females."

31. Plaintiff then went to report Mr. Manabu to her boss James Carter, and Mr. Manabu saw her.

32. Plaintiff also reported Mr. Manabu to Edward Law her Team Lead, Tim Miles her manager, and two co-workers Derrick Sharpe and Jarrod (last name unknown).

33. The next shift Mr. Manabu told Plaintiff that she was not catching on quickly enough and moved her to a different department.

34. The new department was not the department Plaintiff was hired to work in.

35. Plaintiff was unable to complete her essential job functions, received inadequate training, and was subjected to a hostile work environment which white male employees were not.

36. On or about April 16, 2021, Plaintiff was terminated.

37. Defendant, through Mr. Manabu, created a hostile work environment based on Plaintiff's protected class that was severe and pervasive enough to alter the terms of her employment as she was unable to complete her job because Mr. Manabu would not allow it.

38. Defendant's discriminatory action(s) against Plaintiff was in violation of Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, were intentional, done with malice and reckless disregard for Plaintiff's rights as guaranteed under the laws of the United States, and as such, Plaintiff is entitled to receive punitive damages.

39. Plaintiff has suffered, and continues to suffer, emotional distress, loss of self-esteem, and other damages as a direct result of Defendant's unlawful discrimination.

## COUNT II

## RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e-3(a)

40. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-11.

41. On or about March 26, 2021, Plaintiff began participating in a protected activity when she reported Mr. Manabu's discriminatory behavior to her supervisor James Carter.

42. Plaintiff was then transferred to a different department.

43. On or about March 29, 2021, Plaintiff went to her manager James Carter and her assistant manager Eric Govan and again reported Mr. Manabu for the treatment he was subjecting her to.

44. Plaintiff was told to "just move on."

45. Plaintiff then went to Human Resources and Tim Miles and reported Mr. Manabu's conduct and was informed that Human Resources would reach back out to her to set up a meeting to discuss the treatment she had been subjected to.

46. Human Resources and Plaintiff's manager Tim Miles informed her to stay at home until the meeting occurred and that they would reach out to set it up.

47. Plaintiff never received a call about the meeting, instead she received a call from Tony Walker, her General Manager, and agreed to return after the meeting to discuss the treatment was conducted.

48. Plaintiff never received a call to set up the meeting, instead on or about April 16, 2021, Plaintiff was terminated for being a no-call no-show.

49. Plaintiff also reported Mr. Manabu to Edward Law her Team Lead and two co-workers Derrick Sharpe and Jarrod (last name unknown).

50. Plaintiff has a good faith belief that her termination was based on her reporting Mr. Manabu for the conduct he was subjecting her to.

51. This adverse employment action was a direct retaliation to Plaintiff reporting

Mr. Manabu to the HR hotline for harassment.

52. None of the adverse employment actions and/or events described within above occurred until after the Plaintiff reported and attempted to report Mr. Manabu giving a causal connection between the adverse employment actions or events and Plaintiff opposing an unlawful employment practice.

53. Defendant intentionally discriminated against Plaintiff by retaliating against her for opposing an unlawful employment practice.

54. Defendant's retaliatory action against Plaintiff in violation of Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, was intentional and was done with malice and reckless disregard for Plaintiff's rights as guaranteed under the laws of the United States.

55. Plaintiff has suffered and continues to suffer, emotional distress, loss of self-esteem, and other damages as a direct result of Defendant's unlawful retaliation.

## COUNT III

## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000E ET SEQ.

## (DISPARATE TREATMENT BASED ON GENDER)

56. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-11.

57. The Plaintiff, a female, is a member of a protected class.

58. The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. as Defendant has engaged in the practice of discrimination against Plaintiff.

59. While working under Mr. Manabu Plaintiff immediately noticed a difference in the way he treated male employees as opposed to females.

60. Starting on or about March 26, 2021, Plaintiff attempted to do her job with Mr. Manabu, but he told Plaintiff he did not work with females.

61. This was not an assertion Mr. Manabu made to male employees.

62. Further Mr. Manabu made Plaintiff perform tasks that the male employees were not required to complete.

63. On or about March 26, 2021, Plaintiff was performing an inspection on a vehicle and her male co-worker was standing by and watching with Mr. Manabu.

64. Once Plaintiff was finished, she was standing by Mr. Manabu watching her male co-worker perform his inspection.

65. Mr. Manabu yelled at the Plaintiff and told her to "find something to do."

66. Plaintiff expressed she was just watching the inspection as her male co-worker had done.

67. Mr. Manabu told the Plaintiff that her male co-worker was "perfect."

68. After these events Plaintiff questioned why Mr. Manabu was treating her differently than her male co-worker.

69. He expressed that he "does not work with females."

70. Plaintiff then went to report Mr. Manabu to her boss James Carter, and Mr. Manabu saw her.

71. Plaintiff also reported Mr. Manabu to Edward Law her Team Lead, Tim Miles her General Manager, and two co-workers Derrick Sharpe and Jarrod (last name unknown).

72. The next shift after reporting Mr. Manabu, he told Plaintiff that she was not catching on quickly enough and moved her to a different department.

73. The new department was not the department Plaintiff was hired to work in.

74. Male employees were not subjected to this treatment.

75. On or about March 29, 2021, Plaintiff went to her manager James Carter and her assistant manager Eric Govan and again reported Mr. Manabu for the treatment he was subjecting her to.

76. Plaintiff was told to "just move on."

77. Plaintiff then went to Human Resources and Tim Miles and reported Mr. Manabu's conduct and was informed that Human Resources would reach back out to her to set up a meeting to discuss the treatment she had been subjected to.

78. Human Resources and Plaintiff's manager Tim Miles informed her to stay at home until the meeting occurred and that they would reach out to set it up.

79. Plaintiff never received a call about the meeting, instead she received a call from Tony Walker, her General Manager, and agreed to return after the meeting to discuss the treatment was conducted.

80. Plaintiff never received a call about the meeting, instead on or about April 16, 2021, Plaintiff was terminated for being a no-call no-show.

81. The Defendant, through its agents, discriminated against Plaintiff by subjecting Plaintiff to treatment that male employees were not subjected to, which is a violation of Title VII.

82. Defendant's discriminatory action(s) against Plaintiff in violation of Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, were intentional and were done with malice and reckless disregard for Plaintiff's rights as guaranteed under the laws of the United States as such Plaintiff is entitled to punitive damages.

## **COUNT IV**

## **VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000E ET SEQ.**

## **(DISPARATE TREATMENT BASED ON RACE)**

83. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-11.

84. The Plaintiff, an African American, is a member of a protected class.

85. The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. as Defendant has engaged in the practice of discrimination against Plaintiff.

86. While working under Mr. Manabu Plaintiff immediately noticed a difference in the way he treated Caucasian employees as opposed to African American employees.

87. Mr. Manabu made Plaintiff do tasks that white employees were not required to complete.

88. On or about March 26, 2021, Plaintiff was performing an inspection on a vehicle and her white co-worker was standing by and watching with Mr. Manabu.

89. Once Plaintiff was finished, she was standing by Mr. Manabu watching her white co-worker perform his inspection.

90. Mr. Manabu yelled at the Plaintiff and told her to "find something to do."

91. Plaintiff expressed she was just watching the inspection as her white co-worker had done.

92. Mr. Manabu told the Plaintiff that her white co-worker was "perfect."

93. After these events Plaintiff questioned why Mr. Manabu was treating her differently than her white co-worker.

94. Plaintiff then went to report Mr. Manabu to her boss James Carter, and Mr. Manabu saw her.

95. Plaintiff also reported Mr. Manabu to Edward Law her Team Lead and two co-workers Derrick Sharpe and Jarrod (last name unknown).

96. The next shift Mr. Manabu told Plaintiff that she was not catching on quickly enough and moved her to a different department.

97. The new department was not the department Plaintiff was hired to work in.

98. This was a treatment that white employees were not subjected to.

99. On or about March 29, 2021, Plaintiff went to her manager James Carter and her assistant manager Eric Govan and again reported Mr. Manabu for the treatment he was subjecting her to.

100.    Plaintiff was told to "just move on."

101.     Plaintiff then went to Human Resources and Tim Miles and reported Mr. Manabu's conduct and was informed that Human Resources would reach back out to her to set up a meeting to discuss the treatment she had been subjected to.

102.    Human Resources and Plaintiff's manager Tim Miles informed her to stay at home until the meeting occurred and that they would reach out to set it up.

103.     Plaintiff never received a call about the meeting, instead she received a call from Tony Walker, her General Manager, and agreed to return after the meeting to discuss the treatment she was subjected to.

104.      Plaintiff never received a call about the meeting, instead on or about April 16, 2021, Plaintiff was terminated for being a no-call no-show.

105.     The Defendant, through its agents, discriminated against Plaintiff by subjecting Plaintiff to treatment that white employees were not subjected to, which is a violation of Title VII.

106.  Defendant's discriminatory action(s) against Plaintiff in violation of Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, were intentional and were done with malice and reckless disregard for Plaintiff's rights as guaranteed under the laws of the United States as such Plaintiff is entitled to punitive damages.

107.     The Defendant discriminated against Plaintiff by terminating her both because of her race or race was a motivating factor, both of which are a violation of Title VII.

## COUNT V

## VIOLATION OF § 1981 OF THE CIVIL RIGHTS ACT OF 1866 42

## U.S.C. §§ 1981 ET SEQ.

108.  Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-11 and 84-104.

109.  In terminating Plaintiff, the Defendant intentionally and willfully discriminated against the Plaintiff due to her race in violation of § 1981.

110.  The Defendant discriminated against Plaintiff by terminating her both because of her race or race was a motivating factor, both of which are a violation of § 1981.

111.  Plaintiff has suffered and continues to suffer lost earnings, emotional distress, loss of self-esteem and other damages as a direct result of Defendant's unlawful discrimination.

## PRAYER FOR RELIEF FOR ALL COUNTS

**WHEREFORE,** Plaintiff prays that this Honorable Court will:

A. A declaratory judgment, declaring the Defendant's past practices herein complained of to be unlawful.

B. Order Defendant to institute and carry out policies, practices, and programs providing equal employment opportunities for Plaintiff and other employees and eradicating the effects of its past and present unlawful employment practices.

C. Order the Defendant to make whole the Plaintiff by providing other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices.

D. Order Defendant to make whole Plaintiff by providing compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices and false imprisonment described above, including, but not limited to emotional pain, suffering, anxiety, loss of enjoyment of life, humiliation, punitive damages, and inconvenience, in amounts to be determined at trial.

E. Grant such further relief as the Court deems necessary and proper.

## **DEMAND FOR JURY TRIAL**

The Plaintiff demands trial by jury.

Respectfully submitted,

/s/ Ray Foushee
Raymond Foushee
ASB-9344-X13G
Attorney for Plaintiff

/s/Jeremy Schatz
D. Jeremy Schatz

ASB-2400-H34Y
*Attorney for Plaintiff*

**OF COUNSEL:**
Virtus Law Group
100 41st Street South, Suite A
Birmingham, AL 35222
js@vlgal.com
rf@vlgal.com
205-946-1924


## **Clerk: Please serve Defendant via certified mail:**


Mazda Toyota Manufacturing, U.S.A., Inc.
C/O C T Corporation System
2 North Jackson Street Ste 605
Montgomery, AL 36104

# Exhibit 1

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Birmingham District Office**
1130 22nd Street South, Suite 2000
Birmingham, AL 35205
Intake Information Group: 800-669-4000
Intake Information Group TTY: 800-669-6820
Birmingham Status Line: 866-408-8075
Birmingham Direct Dial: (205) 212-2100
TTY (205) 212-2112
FAX (205) 212-2105
Website:  www.eeoc.gov

## <u>DETERMINATION AND NOTICE OF RIGHTS</u>
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 06/24/2022

**To:** Ms. Vera Buckner
1406 Goldridge Drive Sw
Decatur, AL 35603

Charge No: 420-2021-02224

EEOC Representative and email:     WESLEY BERTA
wesley.berta@eeoc.gov
wesley.berta@eeoc.gov

## DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 420-2021-02224.

On behalf of the Commission,

*for*     _____

Bradley A. Anderson
District Director

**Cc:**
Robert Lockwood
rlockwood@wilmerlee.com

Melissa Elliott
MAZADA TOYOTA MANUFACTURING, USA INC.
melissa.elliott@mazdatoyota.com

Jeremy Schatz
VIRTUS LAW GROUP
js@vlgal.com


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 420-2021-02224 to the District Director at Bradley Anderson, 1130 22nd Street South Suite 2000

Birmingham, AL 35205.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

Enclosure with EEOC Notice of Closure and Rights (01/22)

You may request the charge file up to 90 days after receiving this Notice of Right to Sue.  After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.